[Sac. No. 3170. In Bank.—July 6, 1923.]

ANNIE C. W. SCOTT, Respondent, v. THOMAS F. SYMONS et al., Defendants; THOMAS F. SYMONS, Appellant.

[1] CONTRACTS—MINING PARTNERSHIP—SALE OF PROPERTY—ACCOUNTING—PARTIES.—Where all of the parties interested in a group of mines joined in executing an option to sell the property, against which a large indebtedness existed, which was incurred by a partnership operating it, and a bank was appointed, as escrow agent, to hold the transfer papers and to deliver them when the purchase price was paid and the title cleared of mortgages and other liens, and thereafter all of the owners, except plaintiff, entered into an agreement appointing an agent for the owners to carry out the agreement, providing that claims should be paid out by the escrow agent on his order, appellant, against whom judgment was rendered jointly with the owners' agent in favor of plaintiff for a certain sum alleged to have been paid illegally to appellant, who was a creditor and assignee of creditors, is not in a position on appeal to question a judgment settling the accounts between plaintiff and her co-owners in an action brought for that purpose, among others.

[2] ID. — JUDGMENT AGAINST DISBURSING AGENT—OBJECTION TO BY APPELLANT.—In such a case the appellant is not in a position to urge any objections to the judgment in favor of plaintiff, in so far as it affects the individual liability of the disbursing agent.

[3] ID.—TRUSTS — PAYMENT OF MONEY IN VIOLATION OF—LIABILITY OF RECIPIENT.—One to whom money is paid in violation of a trust is an involuntary trustee thereof where he had knowledge of the breach of the trust.

[4] ID.—GOOD FAITH—LIABILITY.—Even though a trustee and the one to whom he pays trust money in violation of the trust act in good faith, the rights of the true owner cannot be affected by the payment.

[5] ID.—STATUTE OF LIMITATIONS.—The period of limitation for an action based upon a written contract whereby a trust was created which was violated by the wrongful payment of moneys, contrary to the terms of the trust, is four years.

[6] ID.—FINDINGS.—It is not necessary that the court find expressly as to the statute of limitations when the facts found show the action was not barred.

[7] ID.—LACHES.—Where the court gives judgment in favor of the plaintiff, it, in effect, finds against the contention that there was unnecessary delay on plaintiff's part in instituting the action.

APPEAL from a judgment of the Superior Court of Tuolumne County. George F. Buck, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

William M. Abbott, K. W. Cannon and Andrew F. Burke for Appellant.

Grant & Zimdars, William H. Bryan and Frank M. Angellotti for Respondent.

WASTE, J.—This action was brought by the plaintiff for an accounting and to recover from the defendants various sums of money claimed to be due her by reason of the acts and conduct of the defendants in connection with the application and distribution of the proceeds of the sale of what was known as the Black Oak group of mines in Tuolumne County and in which plaintiff was the owner of an undivided one-sixth interest. The appeal is by the defendant Symons alone, under the alternative method, from a judgment rendered against him and the defendant J. B. Curtin, jointly, in favor of the plaintiff, for the sum of $15,016.33, which sum the trial court found was wrongfully diverted from the trust fund created by the deposit in bank of the proceeds of the sale of the mining property.

The mining property in question was acquired in 1890, and was thereafter owned by the following parties as tenants in common, W. P. Scott, this plaintiff's husband, hereinafter

at times referred to as Proctor Scott, having an undivided
one-sixth interest, W. G. Scott having an undivided one-sixth
interest, C. S. Dowe holding an undivided one-third interest,
and George W. Campbell and Olive R. Campbell, his wife,
jointly holding the remaining undivided one-third interest.
When the mines were acquired, these parties, excepting
Olive R. Campbell, formed a partnership for the working of
the mining property, which partnership was known by the
firm name of Scott, Dowe & Co., and which continued to
operate the mines until 1903, when Proctor Scott died, and
his wife, the plaintiff and respondent herein, succeeded to
his interest therein. No conveyance was ever made by the
tenants in common, or any of them, to the partnership. At
the time of the death of Proctor Scott the partnership was
heavily in debt, including taxes chargeable against the min-
ing property, in the sum of $69,408.83. At the time, as
appears from the findings, no one of said copartners had
overdrawn his accounts with the partnership, or was indebted
to the partnership or to each other on account of partner-
ship transactions, or otherwise, and the partnership was not
indebted to any of the members composing it on account of
partnership transactions. It also appears that none of the
firm had advanced to the partnership any sum in excess
of the original contributions made at the time of its forma-
tion. The court also found that prior to the death of W. P.
Scott no accounting of the mine operations carried on by
the partnership was ever had, and the relations of the part-
ners to the business had never been adjusted. Continu-
ously from the time of the death of Proctor Scott until the
commencement of this action the most unfriendly relations
existed between plaintiff and the associates of her deceased
husband. Plaintiff desired a sale to be made of the mining
property, and at all times objected to the working of the
mines or the incurring of any indebtedness or obligation in
connection therewith. Over these objections the surviving
copartners continued, at a financial loss, to operate the prop-
erty under the firm name until 1904, when Campbell, Dowe,
and W. G. Scott formed a corporation, styled and known as
the Black Oak Mining Company, no other person being con-
nected with the corporation but those named. Campbell,
Dowe, and W. G. Scott leased the mining property to the
new corporation and operations were thereafter carried on

in the name of the company, which had separate books of account, and all of its transactions were conducted in the name of the corporation. The plaintiff refused to, and did not, have anything to do with the corporation, and refused to, and did not, join in the lease of the property to the company. She never participated in the affairs of the corporation. By the beginning of 1906, Campbell, Dowe, and W. G. Scott and the lessee corporation, Black Oak Mining Company, had exhausted their credit, and the mines were closed down.

Pursuant to a common desire, all the parties interested, the plaintiff included, on December 6, 1907, joined in the execution of an option or agreement to sell the mining property to S. A. Knapp for the sum of $202,500 net to the owners, payable within three years and four months from date of the agreement. At the time of entering into the contract Knapp was aware, in a general way, that an unpaid indebtedness existed, having been contracted by Scott, Dowe & Co. in carrying on mining operations under the old partnership, prior to the death of W. P. Scott, and that a larger indebtedness had been incurred by the Black Oak Mining Company. He also knew there were certain liens against the property. The option agreement, therefore, provided that the owners, including this plaintiff, should cause to be executed and placed in escrow with the First National Bank of Sonora, a grant, bargain, and sale deed of the mining property, and should also (and this is a vital consideration in the case) "cause to be executed and placed in escrow at the same time with said deed and conveyance, an agreement from all the creditors or persons holding outstanding claims of indebtedness against the parties of the first part (the owners of the mine), to the effect that none of said claims or indebtedness will be pressed for payment by any suits which may constitute a lien or institute other proceedings against any of the properties before mentioned, or in anywise interfere with the quiet use, possession and working thereof by the party of the second part (S. A. Knapp) during the life of this agreement, and will, at the same time, place in escrow with said deed and conveyance, proper satisfaction of mortgages and liens upon said property, the same to be delivered when the indebtedness evidenced and secured thereby shall have been paid out of the proceeds of the sale

of said property to be hereinafter mentioned." The agreement further provided for partial payments on the purchase price of the mine, and that when the purchase price was fully paid the First National Bank of Sonora, as escrow agent, should deliver to Knapp deeds, transfers, and documents placed in escrow; and the bank was further authorized "out of the moneys thus received, as the purchase price of said mines, to apply the same in discharging the indebtedness of the parties of the first part in accordance to their priority of record, all taxes due being especially hereby agreed as the first in priority, and thereafter, mortgages and liens, as the same appear of record, and next thereafter all indebtedness not constituting a lien on said property as shall be given to said bank by the parties of the first part on agreements to be made by said creditors, and the balance then remaining shall be paid over to the parties of the first part in the proportions of one-third to G. W. Campbell and Olive R. Campbell, one-third to C. S. Dowe, one-sixth to W. G. Scott, and one-sixth to Annie C. W. Scott, and the said bank shall further cause to be recorded, the expense of which shall be paid by the parties of the first part, the said satisfaction of said liens, so that, at the time of the delivering of said deeds and conveyances to the party of the second part, all liens against said properties to be conveyed shall be satisfied of record." The option agreement also provided that Knapp should keep correct books of account of all moneys invested and expended in the operation of the mining property, and should render to the owners "or to the agent of them as may be hereafter agreed upon" true and correct statements of the total receipts.

Almost coincident with, and as part of the same transaction, an agreement was made by W. G. Scott, George W. Campbell and Olive R. Campbell, C. S. Dowe and Annie C. W. Scott, this plaintiff, and the Black Oak Mining Company, by its vice-president and secretary, with the creditors of Scott, Dowe & Co. and of the Black Oak Mining Company, by the terms of which the creditors agreed not to enforce their demands pending the exercise of the option by Knapp, and that such creditors would look for payment of their demands to the First National Bank of Sonora. All of the debtors, including this plaintiff, agreed that the statute of limitations would be waived, and that the creditors should

be paid by them, through said bank, out of the purchase price of the mining property in the event the option was exercised. On September 19, 1908, proper deed conveying the property of Knapp, together with copy of the option and the creditors' agreements entered into with the owners, were deposited with the First National Bank of Sonora in escrow, and the bank agreed in writing to accept and administer the trusts and make the payments provided for, and directed to be made, by the terms of the option agreement. Knapp took immediate possession of the property, and proceeded to work the mines. Thereafter, on the thirteenth day of October following, the owners of the property, other than Annie C. W. Scott, plaintiff and respondent, together with S. A. Knapp, in writing, pursuant to the terms of the option agreement, constituted the defendant J. B. Curtin agent of the owners "to carry out any and all things provided for in said agreement." Among other things provided for in such power of attorney, all claims were to be paid on his order by the escrow agent under the option agreement, and he had power to designate whether the funds in the hands of the bank should be kept in a special or regular deposit. He might change the escrow agent at any time.

Thereafter, on December 5, 1910, plaintiff and the surviving partners of Scott, Dowe & Co. granted the Black Oak Development Company, as assignee of Knapp, an extension of time. On April 3, 1913, three days prior to the expiration of this extension, the development company exercised its rights, and deposited with the First National Bank of Sonora $202,500, being the full amount of the purchase price of the mining property, and in addition thereto certain amounts of interest required by the extension. On that same date, as appears from the record, Annie C. W. Scott, this plaintiff and respondent, in writing, authorized and empowered the defendant J. B. Curtin, "my agent for the purpose of the adjustment and payment of the claims of the creditors of the copartnership heretofore existing under the name of Scott, Dowe & Co., and for the purpose of the payment of the indebtedness of said Scott, Dowe & Co. . . . to sign checks and draw upon the moneys now in the hands of the First National Bank of Sonora, California, paid thereto by Black Oak Development Company on account of the purchase price of the Black Oak Mining properties;

and I further authorize and empower said J. B. Curtin to sign and draw checks upon the said funds now in the said bank for the purpose of the payment of the indebtedness of the Black Oak Mining Company, a corporation, but this authorization is given with and under the express understanding and consideration that my one-sixth (1/6) interest in the moneys now in said bank shall not be liable for any indebtedness of or claims paid to the creditors of the said Black Oak Mining Company.'' Defendant Curtin, as agent of the owners, began paying the claims asserted against the escrow fund. He continued until he had paid out about $168,000. Of this amount, the trial court found that $69,-408.83 was properly payable on the debts of Scott, Dowe & Co. incurred before the death of plaintiff's husband, with interest thereon up to April 3, 1913, and the amount of taxes chargeable against the mining property to that date. Curtin also paid to the defendant Symons $18,611.14, of which $3,594.81 was for unsecured demands representing debts and liabilities contracted by the Black Oak Mining Company, and included in the creditors' claims required by the option agreement, and two smaller claims, held by Symons under assignment, and all of which he purchased for about thirty cents on the dollar. Included in the above sum paid by Curtin to Symons was an item of $13,926.13, paid to him as assignee in satisfaction of a judgment rendered in favor of the California Safe Deposit & Trust Company on a claim and demand against W. G. Scott and C. S. Dowe, as individuals, two of the former owners of the mining properties, for that amount. This judgment was not a claim or demand against either the Black Oak Mining Company or Scott, Dowe & Co., but was a claim against Scott and Dowe individually, and was not a lien on the mining properties, and was not included in the creditors' agreements. Another item of the aggregate amount paid by Curtin to Symons was a claim of the California Safe Deposit & Trust Company on a note signed by W. G. Scott, C. S. Dowe, G. W. Campbell, and the Black Oak Mining Company, for $831.30, with interest amounting to the sum of $195.75, which was not included in the creditors' agreement. The total amount of these demands purchased by Symons from the California Safe Deposit & Trust Company was the sum of $14,953.73, for which he paid $5,000. Curtin also paid him $62.60 for

two claims not on the creditors' list, making his total trespass on the fund equal $15,016.33.

Before the death of W. P. Scott, plaintiff's husband, a mortgage on all of the mining property was executed by said W. P. Scott, W. G. Scott, C. S. Dowe, G. W. Campbell, and Olive R. Campbell to Thomas A. Fisher for the sum of $10,048.50. After the death of W. P. Scott, G. W. Campbell and Olive R. Campbell executed a mortgage on their undivided one-third interest in the property to Fisher for $3,296.70. Thereafter, W. G. Scott, C. S. Dowe, G. W. Campbell, and Olive R. Campbell executed two mortgages to Fisher of their individual undivided five-sixths interest in the mine, one for $5,000 and one for $24,800. All of these mortgages bore exorbitant rates of interest. Because of this fact, and for the reason that the mortgages, with the exception of that joined in by W. P. Scott, were mortgages of the individual interests of the mortgagors, defendant Curtin declined to make disbursements from the escrow fund in full payment of the mortgage debts, but made a tender and a deposit of the sum of $54,755.14 in full satisfaction. This tender appears to have been made under an agreement between Fisher and Curtin, whereby the former agreed to accept a flat rate of seven per cent interest.

Including this last tender and deposit in satisfaction of the Fisher mortgages, Curtin had now paid out about $168,000 of the escrow funds. There remained subject to his order on special deposit the sum of $38,843.08, which amount the trial court found he considered at that time to be in excess of the equity and claim of the plaintiff Annie C. W. Scott in the fund derived from the sale of the mines.

Fisher subsequently repudiated the agreement for a settlement and brought suit to foreclose the mortgages held against the mining properties. The owners of the mine, the First National Bank of Sonora, and the Black Oak Development Company were made defendants in the actions. He recovered judgment for the sum of $76,644.20. Fisher was one of the signers of the creditors' agreement. The option agreement and the agreement between the owners and the creditors were before the court in the foreclosure actions by proper pleadings. The trial court found that the lien of the mortgages had been transferred from the mining property to the escrow fund, and that Fisher was obligated to

look to the bank for the payment of his money, and that the purchaser of the property who had paid the purchase price into the bank was entitled to obtain title to the property free and clear of any liens arising by reason of the mortgages. Backed by this judgment and an order of court, over the express written instructions of Curtin, the bank paid over the entire balance of the escrow fund to Fisher. By this payment the fund was completely exhausted.

Plaintiff brought this action upon the theory that she was entitled to one-sixth of the amount remaining in the escrow fund after the payment by Curtin of the antecedent debts of Scott, Dowe & Co., including interest and taxes, and that the payment or adjustment of any other claims and demands against the fund by Curtin was unauthorized. In this connection the trial court found that by the terms of the written authorization executed by plaintiff to Curtin, taken in conjunction with the provision of the option agreement, the agreement between the owners of the mining property and the creditors, and by other writings which appear in the record, plaintiff "authorized said J. B. Curtin to pay the creditors of Scott, Dowe & Co. and the creditors of the Black Oak Mining Co. who had signed the creditors' agreement out of the purchase price fund, resorting if necessary, to her [plaintiff's] share of the fund for that purpose," but that "her interest in said purchase price fund, as the successor in interest of her husband, W. P. Scott, . . . was not liable for the debts contracted by the Black Oak Mining Co. or by W. G. Scott, C. S. Dowe, George W. Campbell or Olive R. Campbell after the death of W. P. Scott. . . . That the said power of attorney of April 3, 1913, was given to Curtin by plaintiff upon the understanding and conditions recited in the said writing that plaintiff was not liable for the debts of the Black Oak Mining Co. and all persons justifying or claiming under said power of attorney are estopped from asserting that said plaintiff was liable for payment of Black Oak Mining Co. debts, or that plaintiff's share of the fund resulting from said sale can be charged with the payment of said debts." The trial court also found that plaintiff did not, by the terms of the power of attorney, or otherwise, authorize the payment by Curtin of any indebtedness that was not included in the creditors' list, and that her author-

191 Cal.—29

ization did not empower Curtin to pay the individual indebtedness of any of the other owners of the property. Nor was Curtin, nor the bank, authorized to pay any unsecured debt which was not a lien against the mining property, unless the creditor who was the owner of said indebtedness had signed the creditors' agreement. The court also found that, after the signing of the power of attorney and prior to the payments by Curtin of any moneys to Symons, as assignee of certain demands, plaintiff notified Curtin that her authorization did not authorize or empower him to pay any moneys whatever out of the escrow fund excepting in payment of the debts of Scott, Dowe & Co., whereby the payments would diminish the amount of moneys remaining in the bank to such a sum that, after subtracting the debts of Scott, Dowe & Co. owing at the time of the death of W. P. Scott, there would not be left sufficient money to give to plaintiff the undivided one-sixth of the full purchase price of said mining property.

The trial court found that the full amount of all taxes against the mining property owing or unpaid on April 3, 1913, including interest, penalties, and costs, and the full amount of all obligations of every kind owing by the partnership of Scott, Dowe & Co. at the time of the death of W. P. Scott, with interest to April 3, 1913, was the sum of $69,408.83. It deducted that amount from $207,091.85 (being the sum of $202,500 plus $4,591.85, interest due and payable under the terms of the extension contract with Knapp), the result of which subtraction is $137,683.02. It found that of this amount plaintiff was entitled to receive an undivided one-sixth, or the sum of $22,947.17, on the third day of April, 1913, when the mine was fully paid for. The court then "finds that W. G. Scott, George W. Campbell, Olive R. Campbell and C. S. Dowe were entitled to the remaining five-sixths (5/6) of the said purchase price and interest so paid to said bank; and the court finds that said 5/6 to which the said W. G. Scott, George W. Campbell, Olive R. Campbell and C. S. Dowe were entitled, has been received by them by being paid out by their consent and approval in discharge of the debts and obligations of the Black Oak Mining Co., for which debts the said W. G. Scott, George W. Campbell, and C. S. Dowe were liable, and to the payment of which Olive R. Campbell consented, or the

same was paid in discharge of the individual indebtedness of W. G. Scott, George W. Campbell, Olive R. Campbell or C. S. Dowe, or to some of them individually, or was paid otherwise with their approval and consent, and no part of the full sum paid into said bank on account of said purchase price and interest was left in said bank at the time of the commencement of this action, and that no part of said pur-chase price was paid to this plaintiff.''

The trial court also found that the defendant Curtin made certain unauthorized payments from the trust fund. On the foregoing facts the trial court concluded, and by its decree declared, that plaintiff, as the successor in interest of W. P. Scott, her deceased husband, to a one-sixth share of the mining property, was entitled to receive on April 3, 1913, and was the owner of $22,947.17 out of the purchase price of the property. It was further decreed that plaintiff have and recover from defendants Symons and Curtin the sum of $22,324.65, said amount being the sum of $15,016.33, paid by Curtin to Symons for demands which were not on the creditors' agreement and which were not a proper disburse-ment under the terms of either the option or the creditors' agreement, with interest thereon from May 8, 1913, the date on which the unauthorized payment was made. Judgment was also decreed in plaintiff's favor against the defendant Curtin for two several amounts aggregating $9,149.52, with interest, by reason of the alleged unauthorized payments by Curtin out of the trust fund.

[1] Appellant takes the position that the action was not tried as one for an accounting between the co-owners of the mine, but in fact as one to compel defendant Curtin to give an accounting of *his* stewardship. As sole appellant from the judgment ''in favor of Annie C. W. Scott, the plaintiff in said action and against said Thomas F. Symons,'' he can-not question the correctness of the judgment of the lower court settling the accounts between plaintiff and her co-owners. The prayer of the complaint was that an account-ing be had and taken of all the dealings and transactions of the partnership, Scott, Dowe & Co., from the time of its organization, and of the moneys received and paid out and accounted for in the operation and working of the mines and mining property of such partnership, and that an ac-counting be had between plaintiff ''and the other defendants

herein.'' All the parties to that controversy were before the trial court, and the court has determined as between them that plaintiff was entitled to an undivided one-sixth of the amount realized from the sale of the property after deducting therefrom only that portion of the fund which was applicable to the payment of taxes on the property and the debts of the partnership, Scott, Dowe & Co., contracted before the death of plaintiff's husband. Appellant says that on the trial the taking of an account was waived. The record affords some support to appellant's contention, but the fact remains that the action did embrace the claim for an accounting of the funds arising from the proceeds of the sale of the mining property. As to that fund, it was definitely and finally decided that between the various persons interested in the fund, of whom appellant Symons is not one, this plaintiff was entitled to the whole of the balance. Defendant Curtin, who was the disbursing agent of all the parties in the transaction, and who paid out the various claims against the escrow fund, rendered an account of his transactions. The trial court found that no one of the partners had overdrawn his accounts with the partnership, or was indebted to the partnership or to each other on account of partnership transactions, or otherwise, and that the partnership was not indebted to any of the members composing it on account of partnership transactions. It also found that none of the firm had advanced to the partnership any sum in excess of the original contributions made at the time of its formation. From these and the other findings to the effect that plaintiff was entitled to an undivided one-sixth interest in all of the escrow fund remaining after payment of claims strictly arising out of the partnership of Scott, Dowe & Co., and that the other members of the partnership and owners of the mining property were entitled to the remaining five-sixths of the purchase price and interest paid the bank, and had received their proportion through its being paid out by Curtin with their consent and approval in discharge of the debts and obligations of the Black Oak Mining Company, for which debts they were liable, we may readily conclude that the court did, in effect, take an accounting between all the parties to the option. It does not matter that there may not have been in the strictest sense an accounting, as appellant contends. The lower court, to all intents and

purposes, found that plaintiff was entitled to an accounting, and upon that accounting adjudged the amount owing to plaintiff from her associates to the option agreement. Her associates, all of whom were parties to the action, have not appealed from the judgment declaring that she was entitled to such an accounting, and fixing the sum of money payable to her. Appellant was not a party to the option agreement, nor, as to the unlawful payments made by Curtin to him, was he a beneficiary under its terms or by the creditors' agreements. He had no lien of any kind against the interests of any of the parties to the instruments or to the fund, either by way of assignment, execution, attachment, or otherwise. Neither was the California Safe Deposit & Trust Company, under which he claimed, a party to the option agreement or to the creditors' agreements, nor was it privy legally to any party holding claims under those agreements. He occupied simply the position of an open, unsecured individual creditor of two of the parties to the option. That the claim advanced by Mrs. Scott and sustained by the trial court may be opposed to documentary evidence, or that there may be findings in the record, based upon the reservation contained in the power of attorney executed by Mrs. Scott, which are contrary to the evidence, is no concern of this appellant. He has no status to question the correctness of the judgment on the accounting between the parties interested in the sale of the mining property.

[2] Neither is the appellant in position to urge any objections on this appeal to the judgment in favor of plaintiff, in so far as it affects the individual liability of the defendant Curtin. If it were possible that upon some conceivable theory he might be, he has excluded himself from such action by the limitation contained in his notice of appeal. His sole concern now is as to the correctness of the judgment by which it is decreed that plaintiff is entitled to recover from Curtin and himself the amount paid him by Curtin out of the escrow fund in discharge of the claims of the California Safe Deposit and Trust Company against W. Guy Scott and C. S. Dowe, with interest from the date of such payments. [3] The theory of the complaint as to appellant Symons in this regard is that he had full knowledge of the option agreement, and therefore knew that certain claims held by him, and paid by Curtin out of the moneys deposited

in the bank, were not legitimate claims against the escrow fund; that Curtin, as the agent of plaintiff and others, was the trustee of the fund, and hence paid the money to appellant in violation of his trust, and that thereby Symons became an involuntary trustee of so much of the fund as was unlawfully paid to him. Section 2243 of the Civil Code provides that "everyone to whom property is transferred in violation of a trust, holds the same as an involuntary trustee under such trust, unless he purchased it in good faith, and for a valuable consideration." There can be no question, from the evidence and findings in this case, which we have already referred to and which we do not need to repeat, that Curtin paid Symons the sum of $15,016.33, in violation of his trust. Symons was the vice-president and director and a member of the finance committee of the First National Bank of Sonora for ten years prior to and for some months after April 3, 1913. It appears, also, that Symons was a party to the creditors' agreement representing certain demands in his own favor other than those involved in the present appeal. When it became known to Symons that the holders of the contract to purchase the mining property would exercise their option, and that the full amount due and payable under the terms of the agreement would be paid into the bank, Symons began purchasing at discount demands against the fund which were contained in the creditors' agreement. There is much in the record indicating that Symons had full knowledge and notice of the contents of the option agreement, and he certainly must have had a thorough understanding of the terms of the creditors' agreement which he himself signed. Prior to the payment of any money by Curtin to Symons, as assignee of his various demands, plaintiff, through her attorney, notified Curtin in writing that the authorization of April 3, 1913, contained in the so-called power of attorney, did not give him authority or empower him to pay any moneys whatever out of the fund except in payment of the debts of Scott, Dowe & Co. The trial court found no conspiracy was entered into by the defendants Symons, Curtin, or the First National Bank, or any of them, for the purpose of defrauding plaintiff, either in the matter of the purchase of creditors' claims at a discount by Symons, or in the payment of any such claims out of the moneys resulting from the sale of the mining properties. **[4]** Even

though such finding may have the effect, as appellant contends, of establishing that Curtin and he acted in good faith, still, if money in the trust fund was wrongfully disbursed, the fact that they acted in good faith in the wrongful disposition cannot affect the rights of the true owner. Having wrongfully come into possession of money belonging to the trust fund, whether it was by mistake, violation of the trust, or otherwise, Symons became an involuntary trustee of the amount thereby gained for the benefit of plaintiff, who, the, court found, would otherwise have had it. (Civ. Code, secs. 2223, 2224; *Heydenfeldt* v. *Jacobs,* 107 Cal. 373, 377 [40 Pac. 492].) Neither do we doubt in the least that he had full knowledge of the character of the fund in the hands of the bank, and exact notice of the instruments declaring the purpose to which such fund could be lawfully applied and paid out by Curtin. Appellant gave no consideration of value or otherwise to this plaintiff for the money paid him by Curtin from the trust fund. He bought for an amount far less than their face value the judgments of the California Safe Deposit and Trust Company against W. Guy Scott and C. S. Dowe, individually. Plaintiff derived no benefit from the satisfaction of the judgments against Scott and Dowe which appellant gave to Curtin in return for the unlawful payment from the trust fund.

The trial court found that there was no accord or satisfaction of any claims or demands between plaintiff and Symons; that there was no understanding or accounting of any kind between them concerning any matter whatsoever, and there was no agreement on the part of plaintiff that there was any sum of money due to Symons from the fund derived from the sale of the mining property.

What we have already said disposes in effect of appellant's contention that the judgment must be reversed, even if respondent's other positions are sound, because he is obliged to account to her only to the extent of one-sixth of the fund remaining after the payment of the debts properly chargeable against it. Appellant overlooks the two-fold nature of this action. One purpose was for an accounting of the affairs of the copartnership of Scott, Dowe & Co., and a determination of the rights of the plaintiff and her co-owners of, the mining properties in connection with the purchase money fund. Under this

phase of the case the court has determined, and its judgment in that respect is final, that the plaintiff alone is entitled to a certain definite amount, to wit, $22,947.17, and that the other parties who were interested in the fund have been paid, and their claims against it discharged, through the disbursements made by Curtin. The other purpose of the action is to have the defendants, including appellant, account for and return to the fund any moneys unlawfully taken from it by them. Under the evidence and findings Symons trespassed against the fund and became an involuntary trustee to the extent of his unlawful acquisition. Respondent seeks in this action, so far as appellant is concerned, to recover judgment against him for the amount that respondent, as the sole beneficiary of what should have remained in the trust fund, was entitled to have, and to force him to make good that which she lost through his action, with simple interest thereon during the time of its unlawful detention. (Civ. Code, secs. 2238, 2262.)

[5] Other considerations urged by the appellant in support of his appeal may be more briefly disposed of. The court did not expressly find upon the issue of the statute of limitations. The action is based upon a written contract whereby a trust was created, which was violated by the wrongful payment of moneys, contrary to the terms of the trust. The period of limitations for such action is four years. (*McArthur* v. *Blaisdell,* 159 Cal. 604, 608 [115 Pac. 52]; Code Civ. Proc., sec. 343.) The findings do say, however, that the wrongful payment to Symons was made on May 8, 1913. The original complaint was filed April 1, 1916. The action was commenced within three years after the wrongful diversion of the fund. [6] It was not necessary that the court find expressly as to the statute of limitations where the facts found show the action was not barred. (*Woodham* v. *Cline,* 130 Cal. 497, 499 [62 Pac. 822].)

The contention of appellant that the judgment must be reversed because the trial court did not find upon the issue of ratification is disposed of by the finding of the trial court that there was no understanding or accounting nor accord or satisfaction of claims and demands between plaintiff and Symons, and by pertinent facts elsewhere in the findings which negative any idea that plaintiff ratified,

approved, or confirmed the acts of the defendant Curtin, done or performed in her behalf, to the extent of approving his dealings with appellant.

[7]    The contention that the judgment must be reversed because plaintiff's claim is barred by her laches, and because the trial court failed to find upon that issue, is disposed of by the fact that the court, having given judgment in favor of plaintiff, in effect, found against unnecessary delay on her part in instituting the action. (*Stevinson* v. *San Joaquin etc. Co.*, 162 Cal. 141, 144 [121 Pac. 398].) The evidence fully sustains the trial court in this regard.

The judgment is affirmed.

Myers, J., Kerrigan, J., Seawell, J., Lawlor, J., and Wilbur, C. J., concurred.

Rehearing denied.