[Civ. No. 374. Fifth Dist. Feb. 23, 1965.]

EDNA PACK, Plaintiff and Respondent, v. JACK
VARTANIAN, Defendant and Appellant.

Ralph N. Nickerson, Leo Kolligian and Louis L. LaRose for Defendant and Appellant.

Granger & Moe and Lewis A. Moe for Plaintiff and Respondent.

BROWN (R. M.), J.—By celebration of a marriage ceremony, plaintiff and defendant entered into a putative marriage relationship on January 13, 1944, and separated about March 1, 1960. The putative marriage was annulled about May 13, 1960. Apparently plaintiff filed no responsive pleadings in the annulment action. Plaintiff commenced this action on March 4, 1963, seeking to recover a division of real and personal

property claimed to have been accumulated by the plaintiff and the defendant during the period of the putative marriage, title of which was held in the name of the defendant, together with a share of the rents and profits therefrom from the date of the separation. Defendant appeals from an adverse judgment and from an order denying his motion to vacate the judgment and enter a different judgment. We have concluded that the judgment and the order must be affirmed.

Facts which are not in dispute are as follows: In 1913 defendant's father, Hovakan Vartanian, acquired 105 acres of land, comprised of a parcel containing 65 acres and a parcel containing 40 acres. In 1930 defendant leased the land from his father and conducted farming operations thereon. After his father's death defendant operated the ranch under a leasing arrangement with his mother, and such leasing arrangement continued until the demise of his mother. Evidence was introduced showing two deeds of trust constituting liens against the land. The first deed of trust, dated February 1, 1934, shows defendant's parents, Hovakan Vartanian and Dziadzan Vartanian, as grantors, Willard D. Ellis, Walter C. Dean and Chas. Parker as trustees, and The Federal Land Bank of Berkeley as beneficiary; and that the first deed of trust was given as security for a loan of $4,500 with interest payable in semi-annual installments. The second deed of trust, dated August 1, 1934, shows the same grantors and trustees with the Land Bank Commissioner as beneficiary, and that it was given to secure a loan of $1,500 with interest, payable in semi-annual installments. Plaintiff and defendant celebrated a marriage ceremony on January 13, 1944. Thus, at the date of the marriage ceremony, defendant's father owned the land, defendant operated the ranch under a lease arrangement, and a first and second deed of trust constituting liens thereon were extant. Hovakan died in 1937 and Dziadzan became the owner of the land. On January 14, 1947, Dziadzan executed five deeds, each conveying to one of her five children, including the defendant, an undivided one-fifth interest in the 105 acres. These five deeds were held by an attorney in San Francisco, presumably in escrow, the grantees being unaware of their existence, and were delivered by the attorney to the grantees after the demise of Dziadzan in 1951. The deed naming the defendant as a grantee was received by him in April 1951. Intermediate the execution of these deeds and receipt thereof by the respective grantees, Dziadzan, by a grant deed dated December 7, 1950, conveyed to defendant the 40 acres which

had been included by legal description in the 1947 deeds. In May 1952 defendant purchased from each of his three brothers and one sister their respective one-fifth interests in the entire 105 acres for $6,500 each. The evidence does not show the source of these payments. These sales and purchases were negotiated at arms length through an attorney representing defendant and attorneys representing his siblings. Defendant took title in his name alone. It is conceded that defendant sold the 40-acre parcel at some time during the putative marriage relationship, but the record does not disclose the date of such sale.

Following trial of this action the trial judge divided certain personal property; determined that the defendant owned a one-fifth interest in the 65-acre ranch as his separate property; determined that the remaining four-fifths interest was acquired by purchase through the joint efforts of plaintiff and defendant during the putative marriage relationship; and awarded to plaintiff an undivided two-fifths interest therein. On this appeal, defendant does not challenge the manner in which the personal property was divided. The principal controversy is the division of the 65-acre ranch.

█ The trial court's finding that a four-fifths interest in the real property was acquired by the plaintiff and the defendant by their joint efforts, during the purported marriage, is supported by the presumption that property acquired during marriage, even though taken in the name of the husband, is community property (Civ. Code, § 164). █ The presumption is controlling when it is impossible to trace the source of specific property (*Gudelj* v. *Gudelj*, 41 Cal.2d 202, 210 [259 P.2d 656]). █ The party asserting that property acquired during the period of the marriage is separate bears the burden of establishing its separate character (*Price* v. *Price*, 217 Cal. App.2d 1, 6 [31 Cal.Rptr. 350]). Some courts have ruled that the burden may be met only by "clear and convincing" evidence or "satisfactory proof." (*Thomassett* v. *Thomasset*, 122 Cal.App.2d 116, 123 [264 P.2d 626].) █ Whether or not the presumption is overcome is a question of fact for the trial court. (*Machado* v. *Machado*, 58 Cal.2d 501, 506 [25 Cal.Rptr. 87, 375 P.2d 55]; *Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202, 212; *Harding* v. *Harding,* 223 Cal.App.2d 709, 713 [36 Cal.Rptr. 184].)

█ In this case defendant contends that he produced satisfactory proof to overcome the presumption and clearly establish his entitlement to a greater proportion, if not all, of

the 65 acres as his separate property. He points to his own testimony that, in 1934, foreclosure proceedings were threatened and defendant entered into an ''option'' arrangement with his father whereby defendant agreed to assume and pay the indebtednesses evidenced by notes secured by the two deeds of trust which constituted liens against the entire 105 acres and, upon payment in full, he would ''get'' the 40-acre parcel; that after the demise of his father he entered into a similar ''option'' arrangement with his mother; that at the date of the putative marriage he had paid about one-half of the total lien indebtednesses; that he paid approximately $3,000 into escrow in December 1950 at which time he received the grant deed from Dziadzan conveying the 40 acres to him; and that he sold the 40 acres during the putative marriage relationship. From this testimony he reaches various results by a process of syllogistic reasoning. It is claimed that he acquired a separate property interest in the 40-acre parcel by reason of the ''options''; that upon its sale the proceeds, or a proportion thereof, were separate property, and that the trial court could have traced these funds into the purchase from his siblings of their respective interests in the 65 acres, under the doctrine of tracing by implication. The theory is clear; the supporting proof is not.

As to the existence of an option, defendant produced only one writing. This was a lease with his mother dated March 14, 1938, which granted defendant an option to purchase the 40-acre parcel and contained the following language: ''Said purchase price is to be a sum equal to the mortgage outstanding on my whole vineyard at the time that this option is exercised. This option is to terminate on December 31, 1939.'' Defendant testified that the ''option'' was renewed from year to year; but produced no writings to that effect. In the absence of such writings the question of whether or not there was in fact an option in existence at the time of the putative marriage in 1944 depended solely upon the uncorroborated testimony of the defendant. The trial court found against him on this question as it had a right to do. Further, although the trial judge asked for proof of payments defendant claimed to have made on the liens prior to marriage, none was produced. Defendant testified that he had paid about one-half but was unable to state any sum certain. He produced no evidence of the value of the 40 acres at the date of the putative marriage. The deeds adduced in evidence add to the confusion. Although in 1950 his mother purported to convey

to the defendant the 40-acre parcel, she had theretofore, in 1947, executed deeds conveying to each of her five children an undivided one-fifth interest in all of her realty, including the same 40 acres. Defendant produced no evidence of when he sold the 40 acres. If that sale was subsequent to the purchase from his siblings of their interests in the ranch, obviously the proceeds of the sale could not be traced into that purchase. The fact that the 1952 deeds from his siblings include the description of the 40 acres indicates that defendant had not then sold the 40 acres. It would be unreasonable to assume that defendant sold the realty to a third party and then recorded subsequent deeds conveying to him a four-fifths interest in the same parcel.

The trial judge pointed out the lack of proof of the existence of an ''option'' at the date of the putative marriage; the lack of proof of any payments made by the defendant on the notes secured by the trust deeds; the lack of proof of the exact amount claimed to have been paid thereon; and the lack of proof that such payments, if any, were made pursuant to any option to purchase the 40 acres. Defendant was provided with every opportunity to develop his theories of separate property ownership, but failed to bear the burden of offering ''clear and convincing'' evidence, nor did he explain the lack thereof. The evidence which defendant did produce is not of that conclusive nature as to require a reversal. ■ This court cannot ''indulge in assumptions which tend to defeat the judgment of the trial court.'' (*Harding* v. *Harding, supra,* 223 Cal.App.2d 709, 713.)

Defendant next charges that the trial court erred in finding that all property owned by the plaintiff and defendant on January 13, 1944, and all property thereafter acquired by them was commingled to the extent that tracing the same to any of the property in existence at the date of separation was impossible. ■ It is a familiar rule that separate property may become community property by the process of commingling in such a manner as to make segregation impossible, thus requiring the application of the presumption that it is community property. (*Grolemund* v. *Cafferata,* 17 Cal.2d 679, 683 [111 P.2d 641]; *Kenney* v. *Kenney,* 128 Cal.App.2d 128 [274 P.2d 951]; *Falk* v. *Falk,* 48 Cal.App.2d 762, 768 [120 P.2d 714].) ■ On January 13, 1944, defendant had on deposit in a commercial bank account the sum of $1,506.49 and owned certain farm equipment, the value of which was disputed. At some subsequent time, the date of which is not

shown, the bank account was converted into a joint account. Plaintiff brought to the putative marriage approximately $800 in cash and bonds and a 1939 Chevrolet automobile. The bonds were cashed and the proceeds thereof, together with the cash owned by plaintiff, were deposited in the defendant's bank account. The 1939 Chevrolet automobile was traded in on a pickup for farm use. Plaintiff was employed gainfully for about a year after the marriage ceremony and her salary checks were deposited in the one account. All income derived from farming operations was so deposited. All expenses, both business and personal, were paid by checks drawn on the one bank account. The finding of commingling is amply supported by the evidence.

Defendant charges that the trial court erred in permitting the plaintiff to amend her complaint to conform to proof at trial and allege, in effect, an oral agreement by which any separate property owned by the plaintiff and the defendant was transmuted into property of a community nature. Defendant contends that the post-trial injection of the issue of transmutation into the case constituted a variance from the original complaint, as amended prior to trial, and the issues as preserved in the pretrial order. He also objects to the court's finding on the subject. The evidence of transmutation received by the court and the amendment to conform to proof do not constitute a variance from the original complaint, as amended prior to trial. As was said in *Brown* v. *Brown,* 125 Cal.App. 429, at pages 433 and 434 [13 P.2d 1004],

"Furthermore, we are of the opinion that in an equitable action brought by a wife for the purpose of protecting her expectancy in community property the question of the character of the property which she seeks to have restored to the community is one of ultimate fact depending for its solution upon the existence of purely probative facts respecting the time and manner of its acquisition. . . . The fact of seisin is said to be the ultimate fact which must be shown to warrant recovery. This ultimate fact is to be established by proof of conveyances from a paramount source of title or by evidence of prior possession, but proof of such conveyances or of prior possession merely establishes facts contributing to the final necessary fact that the plaintiff is the owner of some estate in the premises."

 Oral evidence elicited for the purpose of showing an executed oral agreement which operated to transmute any separate property into property of a community nature was

competent to prove the ultimate fact of ownership.　　　　It does not vary the claims made by the plaintiff in her complaint that she was entitled to a division of the property as a de facto spouse. The amendment to conform to proof did not change the cause of action as pleaded in the complaint and preserved in the pretrial order. Even if it be assumed that it constituted an immaterial variance, it was authorized by the provisions of section 470 of the Code of Civil Procedure.

No finding of transmutation need have been made. In *Thomasset* v. *Thomasset, supra,* 122 Cal.App.2d 116, at page 129, the court stated: ''A finding that certain property owned by a married person is separate or community is a finding of an ultimate fact. [Citations.] The evidence from which this ultimate fact is determined need not be found by the court.''

Defendant belatedly advances the theory that he is entitled to a fair return on his separate property investment and contends that he is entitled to at least 7 per cent on the separate capital represented by his separate one-fifth interest in the ranch property under the rule enunciated in *Estate of Neilson,* 57 Cal.2d 733 [22 Cal.Rptr. 1, 371 P.2d 745], and *Pereira* v. *Pereira,* 156 Cal. 1 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A. N.S. 880]. He also, for the first time on this appeal, makes a claim for reimbursement from the common enterprise for contributions thereto from his separate estate.　　　　Such relief was not requested at the trial level. Language from *Dimmick* v. *Dimmick,* 58 Cal.2d 417, at page 422 [24 Cal.Rptr. 856, 374 P.2d 824], is therefore pertinent: ''The record discloses that no request for such relief was made before the trial court and that counsel stipulated at the commencement of the trial that the only issue in the case was whether or not plaintiff had acquired by adverse possession title to defendant's interest in the property.

''It is settled that points not raised in the trial court will not be considered on appeal. [Citations.] This rule precludes a party from asserting on appeal claims to relief not asserted in the trial court.''

Defendant lastly contends that the plaintiff's cause of action is based on a putative marriage which springs from a purported oral contract and, accordingly, the two-year statute of limitations embodied in section 339, subdivision 1, of the Code of Civil Procedure, bars relief. No case authority precisely in point has been cited, nor has our research developed a California case directly holding what statute of limitations applies in an action brought by a putative spouse, after a

decree of annulment has been granted, to obtain a division of property acquired during the putative relationship. ▮ It is the rule that the nature of the right sued upon, not the form of action or the relief demanded, determines the applicability of the statute of limitations. (*Day* v. *Greene*, 59 Cal.2d 404, 411 [29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802]; *Jefferson* v. *J. E. French Co.*, 54 Cal.2d 717 [7 Cal.Rptr. 899, 355 P.2d 643]; *Maguire* v. *Hibernia Sav. & Loan Soc.*, 23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062].) ▮ Clearly, the plaintiff's action is not based on contract, as contended for by the defendant. In *Keene* v. *Keene*, 57 Cal.2d 657, at page 664 [21 Cal.Rptr. 593, 371 P.2d 329], the court said: "To begin with, it will be observed that plaintiff is not seeking to recover the reasonable value of services rendered to defendant, but rather is claiming *an interest in the property* standing in defendant's name and acquired during the period of cohabitation. This being so, plaintiff cannot rely on either (1) a theory of contract 'implied in fact' or (2) a theory of quasi contract or contract 'implied in law.' "

The courts of this state, independently of statutory authority but acting under their broad equitable powers, have held that when a man and woman cohabit as husband and wife and one, at least, in good faith believes that he or she is validly married, he or she is a putative spouse and his or her property rights will be protected. ▮ In such cases property acquired during the period of the relationship is treated as in the nature of community property and it may be divided equally between them. In the case of *Coats* v. *Coats*, 160 Cal. 671 [118 P. 441, 36 L.R.A. N.S. 844], the plaintiff brought an action to obtain a division of property, after a prior annulment had been granted. The court stated that, "The apportionment of such property between the parties is *not provided by any statute*. It must, therefore, be made on equitable principles." At pages 678-679, it was said: "She is not suing to recover for services rendered under a contract for labor, nor to establish the value of her interest in a business partnership. What she did, she did as a wife, and her share of the joint accumulations must be measured by what a wife would receive out of community property on the termination of the marriage. 'The law will not inquire . . . whether the acquisition was by the joint efforts of the husband and wife, or attempt to adjust their respective rights in proportion to the amount each contributed thereto. The law will not concern itself with such an inquiry, but will leave the parties to share in the property

in the same proportion as though the marriage contract was what the wife had every reason to believe it to be, i.e., a valid marriage.' "

To the same effect are *Sanguinetti* v. *Sanguinetti,* 9 Cal.2d 95, 99 [69 P.2d 845, 111 A.L.R. 342]; *Vallera* v. *Vallera,* 21 Cal.2d 681, 683 [134 P.2d 761]; *Olson* v. *Olson,* 4 Cal.2d 434, 438 [49 P.2d 827]; and *Macchi* v. *La Rocca,* 54 Cal.App. 98, 100 [201 P. 143]. ▮ Plaintiff's cause of action having evolved in the case law under general equity principles, her action thereon is an action in equity.

It has been held that section 343 of the Code of Civil Procedure providing a four-year statute of limitations applies to "all suits in equity not strictly of concurrent cognizance in law and equity." (*Piller* v. *Southern Pac. R. R. Co.,* 52 Cal. 42, 44; *Moss* v. *Moss,* 20 Cal.2d 640, 644 [128 P.2d 526, 141 A.L.R. 1422].) This section has been applied to actions founded upon express and constructive trusts (*Scott* v. *Symons,* 191 Cal. 441, 456 [216 P. 604]; *Wrightson* v. *Dougherty,* 5 Cal.2d 257, 264 [54 P.2d 13]); to actions against an involuntary trustee (*City of Petaluma* v. *Hickey,* 90 Cal.App. 616, 621 [266 P. 613]); and to an action brought by a man against his former spouse to cancel a void property settlement agreement (*Moss* v. *Moss, supra,* 20 Cal.2d 640, 644). ▮ We have concluded that, fraud, mistake, laches or other extraordinary circumstances absent, an action brought by a putative spouse to obtain a division of property after an annulment has been granted is within the ambit of section 343 of the Code of Civil Procedure. In this case it is immaterial whether the statute commenced to run about March 14, 1960, when the plaintiff learned of the invalidity of the marriage; or when she was served with process in the annulment action in April 1960; or when the annulment decree was granted on May 13, 1960. The action having been commenced on March 4, 1963, any of those dates would be well within the four-year period.

Under submission with ruling reserved is a motion in this court made by the defendant to produce additional evidence pursuant to rule 23 (b), California Rules of Court, and section 956a of the Code of Civil Procedure. The evidence sought to be adduced consists of a copy of the federal income tax return for the year 1953, together with appropriate testimony or a declaration to establish that it is a true copy. The supportive affidavit fails to point out the particular issue on appeal to which the tax return relates. From appellant's briefs, we understand that it relates to defendant's claims for reimbursement for contributions from his separate property and to a

fair return on his separate capital investment in the ranch property. In view of the conclusions which we have reached on these points, the proffered additional evidence, if received, would serve no useful purpose. (*Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 440 [296 P.2d 801, 57 A.L.R.2d 914].)

The motion to produce additional evidence is denied; the judgment and the order are affirmed.

Conley, P. J., and Stone, J., concurred.