[No. 1,941.]

JANE SCOTT, CHARLES E. SCOTT, AND INDIANA SCOTT *v.* DAVID UMBARGER, PETER SWALLS, AND WILLIAM SWALLS.

PURCHASE BY AN ADMINISTRATOR AT HIS OWN SALE.—If a person procures himself to be appointed administrator of an estate, and at a sale of the property of the estate purchases the same through a third person, who pays no money, and agrees to hold the title for the administrator,

the sale is a fraud on the heirs, and such third person, and all who buy from him with notice, hold the property in trust for the heirs.

DENIALS IN ANSWER.—K. acquired the legal title to land under such a state of facts as made his purchase fraudulent, and made him the trustee of S. U. bought from K. S. commenced an action against U., to have him declared his trustee, and to compel him to convey the land. In his complaint he averred the facts, showing K.'s fraud, and which, in law, made him the plaintiff's trustee. S., in his answer, admitted these facts and his knowledge of them, but denied that he became the trustee of S., or that there was anything unfair or fraudulent in the facts alleged. *Held,* that the answer admitted the trust.

PURCHASE FROM ONE WHO HOLDS IN TRUST. — One who purchases land from another who acquired the title fraudulently, and thereby became a trustee, in order to protect himself in his purchase, must have been ignorant of any of the facts constituting the fraud, not only at the time of his purchase, but when he paid the purchase money and obtained his deed.

CONSTRUCTIVE TRUST.—If a party who is in possession of land, without right, legal or equitable, is fraudulently deprived of the possession by one who does not deprive him of any right at law resulting from his prior possession, and the one who thus obtains possession then purchases the title from the true owner, he does not hold this title in trust for the prior possessor, and cannot be compelled to convey it to him.

APPEAL from the District Court of the Fifteenth Judicial District, City and County of San Francisco.

Charles G. Scott and the plaintiff Jane Scott, were husband and wife, and the plaintiffs Charles E. Scott and Indiana Scott, were their only children. Charles G. Scott purchased the land and took the conveyance in the name of his wife. In June, 1856, the wife, who was in the State of New York, executed an instrument, making the husband her agent to sell or lease and collect the rents. Under this instrument the husband substituted Frederick D. Kohler as agent, and Kohler took possession. In 1857, Scott left California, to join his family in New York, and died intestate in Nicaragua. Kohler became administrator in November, 1858. Kohler obtained an order to sell the land for a debt he alleged the deceased owed him. Kohler sold the land to Umbarger in April, 1863, and Umbarger conveyed one half of it to the other defendants in May, 1863. This suit

was commenced November 25th, 1863. That part of the cross complaint, setting up title in the City of San José, was as follows:

"That heretofore, to wit: on the 21st day of April, A. D. 1858, and for a long time prior thereto, the City of San José, a municipal corporation, by virtue of an Act of the Legislature of the State of California, were the owners in fee (as successors to the former Pueblo de San José) of a large tract of land lying and being in the County of Santa Clara, and State of California, and which said larger tract of land includes within its boundaries the premises hereinafter mentioned and described, and being the land sued for. That on the 21st day of April, A. D. 1858, the Legislature of the State of California passed an Act entitled an Act to authorize the funding of the unfunded debt of the City of San José, and to provide for the payment of the same, passed April 21st, 1858, and which said Act is referred.to, and made a part of this answer. That afterwards, to wit: on the 4th day of August, A. D. 1858, in accordance and pursuance of the provisions of said Act, the said City of San José did sell and transfer the tract of land, and the whole thereof, to Lawrence Archer, Sherman O. Houghton, and James C. Cobb, as the Board of Commissioners of the Funded Debt of the City of San José."

The answer then averred that on the 27th day of June, 1864, the Commissioners of the Funded Debt sold the land to them.

The answer to the cross complaint admitted those allegations, and then proceeded as follows:

"But these plaintiffs deny that they acquired the same, otherwise than in trust for these plaintiffs; and they allege that at the said several dates, when said defendants acquired the said title, they were the trustees, as to these plaintiffs,

of the premises in the complaint herein, and in said answer described, by reason of the facts alleged in the complaint herein; and that the title so acquired by said defendants was acquired for the benefit and to the use of these plaintiffs; and that said defendants are, and were at said dates, by reason of their said position as trustees of these plaintiffs, estopped from buying or setting up any' outstanding title adverse to the title of these plaintiffs."

The Court below adjudged that the defendants held the legal title in trust for the plaintiffs, and that they convey the same. The defendants appealed.

The other facts are stated in the opinion.

*S. O. Houghton,* for Appellants.

The order of sale of the Probate Court having been made without authority and without notice to plaintiffs, the sale by Kohler was void, and neither the title of the estate nor of the heirs was affected thereby. The legal title is in the heirs, and they may recover possession in an action at law. A Court of chancery has no jurisdiction where the complaint shows that the plaintiff has a complete remedy at law. (*Van Doren* v. *The Mayor, etc., of New York*, 9 Paige, 388.) The complaint, therefore, does not state a cause of action. After the estate has been fairly divested of its title to real estate through a legal, bona fide sale and conveyance to a stranger, the administrator may as freely purchase such property as any other property. The general equitable rule is, that a trustee shall not deal with the trust estate for his own profit; that he shall not place himself in a position in which his interest conflicts with his duty; but he may purchase trust property, subject to the right of the *cestui que trust* to avoid the sale at his election, such a sale not being void, but voidable. (Story's Equity Jurisprudence, Sec. 322; *Giddings* v. *Eastman*, 5 Paige, 561; *Devone* v. *Fanning*, 2 Johns. Ch. R.

252.) Even though the interest in the land acquired by the defendants under the deed from Kohler should be considered as held by them under a constructive trust, such trust must be limited to the interest so acquired. Neither Jane Scott nor Charles G. Scott ever had any title, legal or equitable, to the premises. Where a trustee owes any duty toward the property of the beneficiary, or there is any special trust or confidence reposed in the trustee, he cannot buy in an outstanding title to the property which is the subject of the trust, and hold it against the claims of the beneficiary. But that rule does not extend to a bare trustee, or to cases where the trust is purely constructive. The admitted nullity of the sale made by the administrator precludes the possibility of the defendants being chargeable as trustees; for if the sale was without authority, and void, they hold nothing acquired from the estate of Scott, and there is nothing in their hands which can be the subject of a trust in favor of his heirs.

*William M. Pierson*, for Respondents.

The sale by Kohler was voidable, if not absolutely void. (*Boyd* v. *Blankman*, 29 Cal. 19.) The burden of the defense of being a bona fide purchaser without notice rests upon the purchaser. He should also aver, in his pleading, want of notice, and deny all knowledge of the facts charged from which notice could be inferred. (*Woodruff* v. *Cook*, 2 Edw. Ch. 264; *Galatian* v. *Erwin*, Hopk. Ch. Rep. 55, 56, citing Mitf. 215, 216, and cases cited; 2 Maddock Ch. 322–324, and cases; 1 Johns. Ch. 302, 575; 2 id. 157; 3 id. 345; see, also, *Galatian* v. *Erwin*, 8 Cowen, 374; *Tompkins* v. *Ward*, 4 Sandf. Ch. Rep. 594, 610–612; *Grimstone* v. *Carter*, 3 Paige Ch. 421, 437; *High* v. *Batte*, 10 Yerger, 335; *Wigg* v. *Wigg*, 1 Atk. 384; *Hardingham* v. *Nichols*, 3 id. 304; *Tourville* v. *Naish*, 3 Pr. Wms. 307; Tiffany and Bullard on Trustees, 199.) If Kohler could not buy an outstanding title and set it up against the heirs, neither can his vendees, with notice; and that he could

not is elementary law. (Leading Cases in Equity, 56; *Mc-Clanahan* v. *Henderson*, 2 A. K. Marsh, 388, 389; *Morrison* v. *Caldwell*, 5 Monroe, 426, 435; *Kellogg* v. *Wood*, 4 Paige, 578, 621; *Wilson* v. *Castro*, 31 Cal. 435, 436; *Page* v. *Naglee*, 6 Cal. 245; *Salmon* v. *Symonds*, 30 id. 306; *Bludworth* v. *Lake*, 33 id. 263.) It is alleged in the complaint that the defendants claim under the sale, and entered into possession under it, and have received the rents and profits of the land. Now, admit the sale to be absolutely void. The complaint charges a conspiracy between Kohler, Bodley, and Hosmer to cheat the heirs out of their property, and that the defendants had notice of it. It alleges the success of that conspiracy, and that the defendants enjoy the possession of the land as the result of it. If it was done by imposition on a Court, and without giving the heirs an opportunity to defeat the fraud, it strikes us it places the defendants in a much worse position, and makes their liability to the plaintiffs the more emphatic.

By the Court, Temple, J.:

The complaint shows that Jane Scott, while a married woman—the wife of Charles G. Scott—purchased for a valuable consideration the premises in controversy and received a conveyance therefor; that Charles G. Scott took immediate possession of the premises, which he retained until his death, in 1856; that at the time of and immediately before his death he was a resident of San Francisco, in this State, and plaintiffs are his only heirs at law. In 1860, one Frederick D. Kohler, designing to defraud plaintiffs out of the described premises, procured letters of administration upon the estate of Charles G. Scott, deceased, in Santa Clara County, and in pursuance of such fraudulent design made several unsuccessful efforts to procure an order of sale of the property for pretended debts and expenses of administration, and finally

succeeded in obtaining such order in December, 1861; that the order was made without legal notice to plaintiffs, and without authority on the part of the Court; that a pretended sale was made under this order, without notice given, at which Thomas Bodley was the purchaser, in February, 1862, which sale was afterward confirmed by the Probate Court, and conveyance made by the administrator; that the sale was wholly fictitious and for the benefit of Kohler, no money being paid; that Bodley took the conveyance for Kohler, and at his instance and request, and agreeing to hold the title for Kohler; that Bodley had notice of the fraud contemplated by Kohler, and that the land was then worth nine thousand dollars—the purchase money being one thousand three hundred and fifty dollars. On the 19th day of April, 1862, Kohler being still administrator, with the view of further concealing his designs, caused a conveyance to be made by Bodley to one Charles Hosmer, for a nominal consideration of one thousand five hundred dollars, although no consideration was paid. Hosmer also took the conveyance at the instance and request of Kohler, agreeing to hold the same for him, with full notice of all the acts of fraud on his part. On the 21st day of June, 1862, Kohler caused the property to be conveyed to himself for a nominal consideration of one thousand five hundred dollars; that this conveyance was wholly fictitious—no money being in fact paid—Kohler at the time being and acting as administrator of Charles G. Scott, deceased. Kohler afterwards conveyed to defendant Umbarger, who was then in possession as his tenant in his capacity of administrator, and who had full notice of all the acts of fraud on the part of Kohler, Bodley, and Hosmer. Umbarger afterward conveyed to the other defendants portions of the premises, who also took with full notice.

The answer fails to deny the fraud on the part of Kohler, Bodley, and Hosmer. In effect it admits that the pretended

sale was purely fictitious, and made for the purposes mentioned in the complaint. It denies, however, that Umbarger confederated with Kohler to conceal the fraud perpetrated by him, or to defraud the plaintiff in any way; and avers that he purchased in good faith, and for a valuable consideration, without any knowledge or suspicion that there had been any unfair, illegal, wrongful, or unlawful acts on the part of Kohler or any one else connected therewith, and denies that the property was at the time of any greater value than one thousand five hundred dollars, the price paid by him.

The answer also contains a cross complaint, in which it is averred that in 1858 the City of San José was the owner of the premises in controversy, and then sold and conveyed them to the defendants, who now claim to be the owners by virtue of the title derived from the City of San José. They ask to have their title quieted against the plaintiffs.

The answer to the cross-complaint admits that defendants acquired the title from San José, but claims that it was acquired in trust for plaintiffs—the trust arising from the facts alleged in the complaint. Plaintiffs offer to repay the amount paid for the title from the city, and ask that defendants be required to convey to them.

I have been thus particular in stating the pleadings, because, as I think, all the questions involved in the case arise upon them, the evidence not tending, so far as I can see, either to establish or rebut the presumption of notice on the part of Umbarger at the time he purchased or received his deed, except, perhaps, that it shows that Umbarger was in possession under Kohler, as administrator, and knew that Kohler was administrator.

The first question that arises from the pleadings is, whether Umbarger has sufficiently denied notice of the fraud in the title of Kohler.

He admits, by failing to deny, the fact that Bodley did, in fact, purchase as the agent of Kohler, with full knowledge of his fraudulent designs. That the conveyance to Hosmer was also merely colorable. That Kohler was, in fact, the purchaser at the administrator's sale, made by himself as administrator. The sale was, then, a fraud upon the heirs, and the defendants can only be protected upon the hypothesis that Umbarger was a purchaser for a valuable consideration, in good faith, without notice. The fact of notice is clearly charged in the bill, and is not specifically denied in the answer, but there is an affirmative averment that for "valuable consideration, to wit: one thousand dollars, and in good faith, and without any knowledge or suspicion on his part that there had been any unfair, illegal, or wrongful acts on the part of said F. D. Kohler, or any one else connected therewith, he made a purchase of the interest of the said F. D. Kohler in and to the lands set forth in said complaint; and he denies that he had any knowledge whatever of any illegal or wrongful act of said Kohler." He also denies knowledge that the property was held in trust by Kohler, and denies notice of any fraudulent or wrongful acts on the part of Kohler or any other person, or that they are or ever were the trustees. The defendants do not deny that Bodley purchased at the instance of Kohler, and for his benefit, or that Hosmer took the title for Kohler, as charged in the complaint. The most these denials can be held to amount to is, that neither Bodley, Hosmer, or Kohler, in taking the title as alleged, did thereby become the trustee of plaintiffs, and that there was nothing unfair, illegal, wrongful, or fraudulent in Kohler's purchasing the property in that way. They admit the fact that Kohler did purchase at his own sale, *per interpositam personam;* that they knew of these facts, but were not aware that there was anything unfair, illegal, wrongful, or fraudulent about it, and deny that Kohler thereby became trustee for plaintiffs. Under

the circumstances it was incumbent upon the defendants to deny specifically knowledge of the alleged facts, or of any facts which would have put them upon inquiry, not only at the time of the purchase but at any time before they paid the purchase money or received their deeds. I, therefore, agree with the learned Judge before whom the case was tried, that notice of the frauds perpetrated by Kohler is not sufficiently denied.

A more important question arising in the case is, whether the facts admitted in the pleadings constituted the defendants the trustees of plaintiffs, and whether they can be compelled to convey. to plaintiffs the title acquired from the City of San José.

Although it is alleged in the complaint that Jane Scott, while the wife of Charles G. Scott, acquired title in fee simple, yet it is admitted in the answer to the cross-complaint that the title was afterwards acquired by the defendants from the City of San José; in other words, that Scott had no title whatever, and it does not, therefore, appear that he had any equities with reference to the land.

It is also alleged in the complaint that the order of sale was unauthorized and the sale illegal and of course void. From this it appears that even the rights which Scott had, arising from possession, did not pass under the pretended probate sale. Kohler remained in possession, as administrator, and at least as soon as the administration was closed the heirs could have recovered the possession in an action at law. Therefore the defendants have never taken the legal title or any rights to the premises in trust for plaintiffs.

Were the trust fully established, it would constitute a constructive trust, and unless by reason of the position thus obtained they were enabled to acquire the outstanding title, I do not see how it would be a fraud upon the rights of. the plaintiffs. No relation of confidence existed between them which imposed duties upon defendants in defending the

rights of the plaintiffs or tended to induce plaintiffs to rely upon them. Defendants, by the sale, acquired no equity which was afterwards ripened into a title, nor does it appear that the possession of the property aided in any way the acquisition of the title. A party in possession without right, legal or equitable, is fraudulently deprived of the possession, without, however, depriving him of any right of possession at law resulting from his actual prior possession, and then the wrongdoer purchases the title from the lawful owner. I know of no principle upon which he can be compelled to convey it. I therefore think the title acquired did not inure to the benefit of plaintiffs, and that the defendants cannot be compelled to convey to them.

Judgment reversed and cause remanded for further proceedings.

Mr. Justice WALLACE, being disqualified, did not sit in this cause.

Mr. Chief Justice RHODES did not express an opinion.