[Civ. No. 12470. First Dist., Div. One. Nov. 16, 1943.]

JULIA LUCAS, Respondent, v. ASSOCIACAO PROTEC-
TORA UNIAO MADEIRENSE DO ESTADO DA
CALIFORNIA (a Nonprofit Corporation) et al., Defen-
dants; JOHN J. MONTERO, Appellant.

346

. E. H. Christian and John Jewett Earle for Appellant.

J. Elwood Andresen and Thomas G. Michaels for Respondent.

PETERS, P. J.—This action was brought by Julia Lucas against the Associacao Protectora Uniao Madeirense Do Estado Da California, a Portuguese social, beneficial and benevolent fraternal organization of which she is a member, and against its directors and several of its members, including John J. Montero. The judgment decreed that John J. Montero holds certain real property in trust for plaintiff. From this judgment John J. Montero alone appeals.

The evidence most favorable to respondent is as follows: Respondent and appellant, in the year 1940, were members of the defendant lodge, although of different councils. The lodge was authorized, among other things, to lend money on real property secured by first liens. Prior to January, 1940, respondent had secured an interlocutory decree of divorce from her husband, and had been awarded a life estate in the real property in question, which was a large city lot improved with a residence and out buildings. She occupied the house

with her two children and her mother. Her husband had declared a homestead on the property, and there were certain liens against the remainder interest of the husband which arose subsequent to the homestead. There was also a loan against the property, secured by a deed of trust prior to the homestead, which was held by the Pacific States Savings & Loan Company on which there was a sum less than $500 due. There was also the possibility that a former wife of the husband of respondent had some claim to the property. Taxes were delinquent. Under these circumstances, respondent arranged to buy out her divorced husband's remainder interest for $200. She desired to secure a loan from the lodge for this purpose. In January, 1940, she was introduced to Joe Montero, brother of appellant, and a member of the loan committee of the lodge. Joe Montero appraised the property at $2,050, and recommended that the lodge could safely lend up to $800 on the property. After the board of directors had approved Montero's recommendation, Montero took respondent to E. H. Christian, attorney for the lodge. The attorney secured a title search and discovered the possible claims against the property, and came to the conclusion that it would be impossible for respondent to give the lodge a first deed of trust as security for the proposed loan. The attorney then suggested, and advised, that there was one way, and one way only, that the title could be cleared and the loan made. He suggested that the lodge would purchase, or obtain, an assignment of the existing note and deed of trust from the Pacific States Savings & Loan Company; that then the lodge could foreclose or sell under the deed of trust; that the lodge would purchase at the sale and thus obtain a title clear of all defects; that after the lodge had thus secured a clear title it would reconvey to respondent or to her nominee upon her executing a promissory note secured by a first deed of trust for the amount of the money advanced and expenses incurred by the lodge. This would, of course, give respondent or her nominee a clear title. Neither the attorney nor any member of the loan committee made any attempt to get in touch with those who had possible claims against the property to see if they would quit claim to respondent, nor did they suggest the possibility of a quiet title action to test the validity of such claims. The attorney informed respondent that the procedure outlined above was the only way to proceed. He also informed respondent that the sale of the property would have to be by a public sale, that the lodge would bid only in the

amount of its advances, and that a private bidder might bid higher and take the property. He told respondent that she ought to keep the whole thing quiet.

The respondent, in the belief that the procedure outlined was the only method by which she could get the property, and without full realization that she would thus be jeopardizing her life estate therein, and upon the assurance of the lawyer that "We will see the property is protected and taken care of," agreed to the plan.

Pursuant to this plan the lodge thereafter purchased, from the Pacific States Savings & Loan Company, the existing deed of trust, and had two of its members, one of whom was Joe Montero, substituted as trustees under the deed of trust. The trustees published and posted the usual notices of sale, the sale to be held at 10 a. m., August 23, 1940. Approximately ten days before the sale the attorney was informed by a creditor of the remainderman that his client would probably bid at the sale. Although the attorney knew respondent's address, he did not inform her of this fact until the morning of the sale, did not inform any of the lodge members of this fact until the night before the sale, and did not take any steps permitted by law to postpone the sale so that respondent could attempt to protect her interests.

The night before the sale the attorney told Joe Montero that the creditor of respondent might bid at the sale. Joe thereupon telephoned to his brother, the appellant, and informed him generally of the situation. Until John received this telephone call he knew nothing about the transaction and did not know respondent. Joe told his brother that the property was of such a value that he could safely bid $1,400 or $1,500, but that, if he did bid, he was not to compete with the lodge but was to bid only if some third person bid higher than the lodge.

The next morning, and prior to the sale, Joe Montero met with his brother. At that time he told appellant "about Mrs. Lucas and about the lodge trying to help her out." When asked if he explained the whole transaction to his brother, he replied "I explained the best I knew how." From this evidence, and from the record as a whole, it is a reasonable inference that prior to the sale appellant knew all about the relationship between the lodge and respondent.

The sale was held at 10 a. m., August 23, 1940. Ten minutes before the sale was to occur respondent was informed by the attorney of the fact that the creditor of her husband was a

prospective bidder. Respondent asked the attorney why she had not been informed sooner. According to respondent's testimony, which is not disputed (the attorney not being called as a witness by appellant), the attorney told her that he was busy and did not have her telephone number and that he did not think the creditor would bid. Respondent pointed out to him that he could have written to her about the matter and stated "If I knew that, I could have somebody bid for me." In spite of this objection, neither the attorney nor the trustees took any steps to postpone the sale as they could legally have done. Promptly at 10 a. m. the sale was had, the attorney for the lodge acting as auctioneer. A lodge member bid $796.48. This witness testified that the attorney told him not to bid any more. The creditor of the husband bid $1,100, whereupon appellant bid $1,125, and, there being no further bids, the property was sold to him.

Immediately after the sale, and prior thereto, respondent protested to several of the lodge members, including some of the directors. She was assured that she should not worry—that everything was going to be all right. One of the then directors of the lodge—Frank S. Jardin—told respondent "Why, that is your own brother. He is going to buy for the lodge and everything looks all right."

Shortly after the sale the respondent asked appellant to reconvey the property to her, she offering to pay the purchase price, plus an appreciable sum for his trouble. Appellant refused not only her request, but the request of a committee of the lodge later appointed to induce him to convey to respondent in order to maintain fraternal harmony and to carry out the arrangement made with respondent, unless respondent would pay him $3,000 for the property. He took the position then, and contends now, that he bought the property as his own without any understanding or arrangements with anyone.

For two months after the sale respondent continued to live on the property, making two payments of $15 to appellant. She then refused to make any further payments and appellant had her evicted by court order. This action was thereafter instituted.

On this evidence the court concluded that appellant holds the title to the property in trust for the respondent, subject to the repayment to him of all moneys expended by him in acquiring and caring for the property, less the rentals received by him.

The findings are not as clear as might be desired in that

the proper distinction between the defendant lodge, the defendant lodge members, and the appellant was not clearly made. In spite of this defect, however, the findings are full, fair, and complete, and clearly disclose the theory of the trial court and amply support the judgment. The court found that the attorney for the lodge told respondent that the only way the transaction could be legally consummated was by the friendly foreclosure; that this plan was agreed to by the respondent and the lodge; that at all times there was a confidential and fiduciary relationship between the ''defendants'' and respondent; that respondent relied on the promises and representations made by the ''defendants''; that in reliance on the agreement respondent abandoned all other attempts to refinance the indebtedness; that prior to the sale the ''defendants'' knew that a creditor of the husband of the respondent intended to bid at the sale; that this knowledge was withheld from respondent until just before the sale; that a director of the lodge, immediately after the sale, told respondent that appellant had bought the property for the lodge; that appellant obtained all of his knowledge of the transaction from his brother, who was a lodge member and one of the members of the loan committee and one of the substituted trustees; that a demand was made by respondent for a reconveyance, which was refused; that by reason of the failure of ''defendants'' to perform their agreement the respondent was defrauded and deceived and ousted from possession; that the friendly foreclosure suit was not the only way to clear respondent's title for the purpose of subsequent hypothecation; that the payments made by respondent to appellant were not made as rent but were to be applied pursuant to the agreement.

 On this appeal many technical objections are raised by appellant. Fundamentally but one basic question is presented, namely, whether appellant's knowledge of the situation was such that the trial court was justified under the law in holding that appellant took the property in trust for respondent. On this question we have no hesitancy in holding that the determination of the trial court is supported by the facts and by the law.

The court found that there was a relationship of trust and confidence between the lodge and respondent. This finding is clearly supported by the evidence. In *Palladine* v. *Imperial Valley F. L. Assn.*, 65 Cal.App. 727, at p. 745 [225 P. 291], it is stated: ''For reasons equally cogent it must be held that when two men deal with each other as members of the

same fraternal order, and one accepts as true the representations of the other, into which but for the fraternal relation he would have made inquiry, the law will protect him in his trust.'' Appellant claims the above quoted portion of the opinion is dictum and is not sound in any event. With these contentions we cannot agree. The quoted rule is particularly applicable to the facts of the present case because the record demonstrates that respondent as a fact placed confidence in the lodge and its attorney, and that without such trust and confidence the agreement here involved would not have been made.

■ Once it is established that the lodge was in a confidential and fiduciary relationship to respondent, the failure of the lodge to carry out the agreement as contemplated constituted a fraud on respondent. (See cases collected 25 Cal. Jur., p. 164, sec. 34.) In addition, as found by the trial court, the attorney for the lodge falsely represented that the only way to cure the title was by the friendly foreclosure suit. While it is true that respondent was told that the public might bid at the sale, she was not told until immediately before the sale that the lodge had knowledge that a particular third person intended to bid. No steps were taken to postpone the sale to permit her to refinance from other sources.

When the evidence is considered as a whole it is apparent that the trial court was justified in finding that the lodge in securing the assignment of the trust deed, and in holding the foreclosure, was acting as trustee for respondent. (*Sandfoss* v. *Jones,* 35 Cal. 481; *Webb* v. *Vercoe,* 201 Cal. 754 [258 P. 1099, 54 A.L.R. 1200] ; see cases collected in annotations 42 A.L.R. 10, 78; 54 A.L.R. 1195, 1198; 135 A.L.R. 232, 250.) ■ Once it is established that the lodge held the property subject to the trust above defined, it follows, as a matter of law, that if appellant knew of the trust when he purchased, he took title subject to the trust whether or not there was, in fact, a confidential relationship between him and respondent. The rule, supported by many cases, is thus stated in 25 Cal.Jur., page 222, section 90 : ''On the other hand, a person who acquires property from another with knowledge that the transferor has merely the legal title, equitable ownership being in a third person, is deemed to hold the land, goods or securities charged with a trust in favor of the equitable owner; and the latter may maintain a suit to establish ownership and compel a transfer of the property.'' In *Thompson* v. *Bank of California,* 4 Cal.App. 660, 667 [88 P. 987], the court

stated: "And a court of equity will enforce a trust against all persons who, with notice of the trust, come into possession of the trust property, in the same manner and to the same effect as against the original trustee." This rule was established in this state as early as the case of *Price* v. *Reeves,* 38 Cal. 457, where it was held that a party who purchases trust property, with knowledge of the trust, occupies the same position with the original trustee. In this case one of the defendants promised to bid in certain property at a foreclosure sale and hold the same for an obligation owed defendant by plaintiff. This defendant purchased the property at the foreclosure sale, but then sold to another defendant who had knowledge of plaintiff's rights. The court held that the first defendant took the property in trust for plaintiff, and that the second defendant, who took with knowledge, was also chargeable as trustee, and was liable for the value of the property after he had conveyed to a bona fide purchaser. (See, also, *Scrivner* v. *Dietz,* 84 Cal. 295 [24 P. 171]; *Bell* v. *Staacke,* 141 Cal. 186 [74 P. 744]; *Moultrie* v. *Wright,* 154 Cal. 520 [98 P. 257]; *Middlecoff* v. *Durnal,* 130 Cal.App. 119 [19 P.2d 810].) Where the transferee has knowledge of the trust, it is of no importance that he acted in good faith or without intention of perpetrating a wrong. (*Scott* v. *Symons,* 191 Cal. 441 [216 P. 604]; *Scott* v. *Umbarger,* 41 Cal. 410; *Municipal Bond Co.* v. *Riverside,* 138 Cal.App. 267 [32 P.2d 661].) These principles, in our opinion, are applicable to the facts of the instant case.

█ There can be no doubt that appellant knew, prior to the purchase, the essential elements and circumstances of the transaction between respondent and the lodge. The court's finding in this respect is amply supported by the testimony of Joe Montero. █ The only material fact of which appellant did not have actual knowledge was that the lodge, or its attorney, had not told respondent that they knew a creditor intended to bid at the sale in time for her to protect her interests. However, the trial court was justified in believing that, under all the circumstances, the appellant was put on notice sufficient to require him to make inquiry. The applicable rule, supported by many authorities, is thus stated in 25 Cal. Jur., page 223, section 91: "Although the transferee may have had no actual knowledge of the fact that the property or money was held by the transferor as trustee, the claim of the equitable owner will be held to be superior to that of the transferee where the circumstances attending the trans-

action justify or require a conclusion that the transferee ought to have discovered or acquired knowledge of the existence of the trust. The rule is that knowledge may be imputed to the defendant where the facts were such that a 'prudent' man would have made inquiry as to the state of the title, and the investigation would have disclosed the existence of the trust.''

█ Under these rules it matters not that appellant did not personally know respondent, or that, in fact, no relationship of trust and confidence existed between him and the respondent. The lodge was acting as a trustee. This, the appellant knew. The trial court has found, and the finding is supported, that the lodge violated that trust. This, the defendant should have known. Under such circumstances, innocent as appellant may have been of any intent to defraud respondent, equity will not permit him to retain the fruits of the transaction.

█ Appellant makes many technical objections to the judgment, none of which is ground for reversal. He urges that a confidential relationship was not properly pleaded. The following cases, in which demurrers were overruled, demonstrate the point is without merit: (*Sandfoss* v. *Jones,* 35 Cal. 481; *Webb* v. *Vercoe,* 201 Cal. 754 [258 P. 1099, 54 A.L.R. 1200]; *Penziner* v. *West American Finance Co.,* 133 Cal.App. 578 [24 P.2d 501].) Appellant also points out that the amended complaint upon which the cause proceeded to trial purported to charge a fraudulent conspiracy among all the defendants, and contends that the conspiracy is not properly alleged. The pleadings (sixth and seventh amended complaints) are certainly not models. The allegations are probably insufficient properly to charge a conspiracy. But there are sufficient allegations, independent of the conspiracy charge, to allege a trust based on the theory above fully discussed. For this reason the allegations of conspiracy may be-disregarded. This conclusion is also an answer to the contention that the findings are not responsive to the issues framed by the pleadings. Facts sufficient to support the theory of a trust were sufficiently pleaded. The mere fact that the pleader may have intended to plead a conspiracy is immaterial as long as the facts to support a proper theory were also pleaded. The plaintiff is entitled to relief on any theory supported by the facts alleged.

■ The appellant also urges that the advice given as to how to clear the title was only an expression of opinion on a question of law, and, for that reason, the finding of fraud based thereon is not supported. The rule of the cases cited by appellant—*Choate* v. *Hyde,* 129 Cal. 580 [62 P. 118] and *Perlick* v. *Pacific Discount Corp.,* 53 Cal.App.2d 136 [127 P.2d 647]—is not here applicable. As shown by the Perlick case, that rule has no application where there is either a confidential relation or where there is justifiable reliance on the representation. Both exceptions here apply.

■ Appellant does make one meritorious contention, which relates, however, only to the form of the judgment. The judgment decrees that appellant holds the title to the property "in trust for the plaintiff Julia Lucas, subject however to the repayment to him of all moneys which the said defendant expended in acquiring, improving and maintaining said property, less however all moneys received as rents and benefits collected from said property by said defendant." It will be noted that the judgment fails to prescribe a time limit within which respondent must pay appellant, and fails to provide for a method for ascertaining those charges. Obviously, respondent should not have an unlimited period within which to pay appellant. This defect, however, in no way affects the soundness of the judgment. The judgment is affirmed. The trial court is instructed to ascertain the amounts due to appellant, and to thereupon fix a reasonable period within which respondent must pay appellant the amount so ascertained. Respondent to recover her costs on this appeal.

Knight, J., and Ward, J., concurred.

A petition for a rehearing was denied December 16, 1943, and appellant's petition for a hearing by the Supreme Court was denied January 13, 1944.