[Civ. No. 15968. First Dist., Div. Two. Jan. 27, 1955.]

L. E. LANTZ, Respondent, v. FRED T. STRIBLING et al., Appellants.

Fred T. Stribling and Ralph E. Hopper, in pro. per., and David D. Oliphant, Jr., for Appellants.

John V. Copren for Respondent.

DOOLING, J.—This is an appeal from a judgment quieting title to a large tract of undeveloped land in the Town of Newark in favor of plaintiff-respondent Lantz and naming defendant-appellant Steffensen as trustee of the real property for the benefit of Lantz pending a payment of a certain sum of money by the latter to the former.

California Land and Livestock Company (hereinafter called California Land) a corporation, executed and delivered to

Riviera Realty Company (hereinafter called Riviera) a corporation, a deed dated October 26, 1949, and recorded on December 7, 1949, which conveyed certain land located in the Town of Newark.

Subsequent to the conveyance to Riviera, a joint venture agreement was entered into between it and California Land on January 26, 1950, and amended in certain particulars on February 21, 1950. The agreement was signed by Wilson and Constance Barnett for California Land and by P. E. and F. O. Beutke for Riviera. It provided that Riviera would hold the land conveyed and would carry out a building program on it with the view to selling the lots for the best possible price. Riviera was given the power to negotiate for and obtain loans, to execute deeds of trust and promissory notes and to use the money so obtained to construct buildings and for other necessary expenses. All expenses incurred including building expenses, taxes and liens would be deducted from the sales price and the net amount remaining was to be divided equally. Riviera was given authority to sell the lots unimproved also, but for not less than a price of $200. This sum, less prorations of liens, taxes, etc., would go to California Land and the excess above $200 would be divided equally between the parties. The agreement was amended on February 6 to read that the minimum sales price for each lot was to be $300 instead of $200. The original agreement also stated that it was binding "upon the successors and assigns of the parties hereto," and that it was to terminate in five years unless there were still outstanding notes signed by California Land. In such event the agreement was to continue until all notes were paid or Riviera absolved of liability. At the expiration of the agreement, all remaining properties were to be conveyed back to California Land by Riviera.

Later on February 26, 1951, California Land assigned its interest in the joint venture agreement to L. E. Lantz, the plaintiff and respondent in the action at bar.

By a deed recorded June 28, 1951, Riviera conveyed its interest in the land to Frank Steffensen for a consideration of $1,800. This was composed of $1,500 in cash and a lot valued at $300. Steffensen testified that he knew of and saw the joint venture agreement before the land was deeded to him by Riviera.

In September 1946, Central City Construction Company, a corporation, that owned the land prior to California Land, executed a deed of trust on blocks 162 and 163 to Bancroft

and Gove, Inc. as security for the sum of $1,600. In July 1947 Central City executed another deed of trust in favor of Bancroft and Gove, Inc. on Blocks 150-155 inclusive, Lots 14-20 of Block 160 and Blocks 217 and 218 and Lots 21-24 in Block 3 as security for a loan of $5,500 by Bancroft and Gove.

On December 19, 1949, in the Municipal Court in San Francisco, George Workman obtained a judgment against California Land and others for $1,399.88 and $29.50 costs. The judgment became a lien on the lands described in the deed of trust.

Workman assigned this judgment to Steffensen on May 4, 1951, in consideration of payment of $1,330.50.

On September 15, 1951, Steffensen acting through his attorney Ralph E. Hopper bought both Bancroft and Gove notes and deeds of trust. He paid $9,716.29 for them and they were assigned to Hopper. The reason for this was to prevent a merger of the lien of the deeds of trust and Steffensen's title received from Riviera.

Simultaneously with the acquisition of the deeds of trust Steffensen consummated a sale of Blocks 217 and 218 to Food Machinery Corporation. The sale was made subject to an agreement that Steffensen would prosecute to successful conclusion a quiet title action in the name of Food Machinery. This action was brought and the court rendered a decree in favor of the plaintiff, Food Machinery Corporation.

The two deeds of trust evidently were due on August 23, 1947 and January 18, 1948, and at the time Steffensen purchased them no money had been paid either on the principal or as interest.

Fred T. Stribling, as a substitute trustee under the above deeds of trust, caused to be recorded notices of default of the two deeds of trust and on July 4, 1952, caused to be published a notice of trustee's sale of the properties securing the notes. Before the notice sale plaintiff filed his complaint herein "to cancel deeds of trust and promissory notes and to quiet title, and for restraining order and injunction."

The trial court decreed that Steffensen holds all the blocks with the exception of 217 and 218 in trust for Lantz subject to the terms and conditions of the joint venture agreement. It ordered further that Lantz pay Steffensen the sum of $8,248.67 less the costs of the suit within 90 days from the date of the judgment and that Steffensen within 10 days after receipt of the money assign to Lantz the two promissory notes and deeds of trust securing them and the judgment in the

case of *Workman* v. *California Land* and convey by deed all his right, title and interest to all the property involved excepting Blocks 217 and 218. The court found that Lantz had acquired no interest in Lot 217 but as to Lot 218 found that California Land had conveyed title to that lot to Steffensen and that Lantz was entitled to an accounting of the purchase price received by Steffensen on the sale of that lot to Food Machinery Corporation.

Appellant's brief is long and divided into many subtopics which in some cases can best be considered together.

Before considering the many points made by appellant it will simplify the discussion to outline the basic theory of the trial court in rendering the judgment appealed from. The joint venture agreement between California Land and Riviera constituted Riviera, as the joint venturer holding title to the property, a trustee for California Land. ██ "The rule is that the rights and liabilities of joint adventurers, as between themselves, are governed by the same principles which apply to a partnership" (*Zeibak* v. *Nasser,* 12 Cal.2d 1, 12 [82 P.2d 375] ; *Cunningham* v. *de Mordaigle,* 82 Cal. App.2d 620 [186 P.2d 423]) and one partner holding title to property for the partnership is a trustee for his copartners (*Bastjan* v. *Bastjan,* 215 Cal. 662, 667 [12 P.2d 627]).

██ One who takes property from a trustee in violation of the trust with knowledge of the trust holds the property subject to the trust as a constructive trustee. (Civ. Code, § 2243; *Scott* v. *Symons,* 191 Cal. 441, 453-454 [216 P. 604] ; *Lucas* v. *Associacao Protectora etc. Da Calif.,* 61 Cal.App.2d 344, 351-352 [143 P.2d 53] ; 2 Scott on Trusts, § 291, p. 1605; Rest., Restitution, § 168; *Id.,* Trusts, §§ 288-291.) ██ Since appellant testified that he had seen the joint venture agreement before he purchased the property the above stated rule is applicable to this transaction.

██ Appellant's first argument is that the joint venture agreement was not supported by any consideration. He points out that the land was conveyed to Riviera before the joint venture agreement was entered into and that California Land was bound to do nothing by the joint venture agreement, all of its obligations resting on Riviera. The trial court found that the land was conveyed to Riviera in contemplation of the joint venture agreement. Appellant concedes that if this finding is supported by the evidence there would be a good consideration. He argues however that the joint venture

agreement on its face shows that this was not true. The writing itself imports a consideration (Code Civ. Proc., § 1963, subd. 39; Civ. Code, § 1614) and the joint venture agreement recites the prior delivery of the deed by California Land to Riviera and follows this recital with the statement: "Now, therefore, it is agreed by and between the parties hereto as follows . . ." Even without the disputable presumption of consideration the court could reasonably draw the inference from this recital that the deed was delivered to Riviera in contemplation of the joint venture agreement. There is another disputable presumption "that the ordinary course of business has been followed" (Code Civ. Proc., § 1963, subd. 20) and in the ordinary course of business one corporation having purchased a piece of property from another unconditionally would not at a later date bind itself without consideration to the onerous conditions contained in this agreement with regard to the property that it had previously purchased.

The witness Beutke, an officer of Riviera, was called by respondent Lantz to identify the joint venture agreement and the amendment to it. He testified that the deed from California Land to Riviera was given in satisfaction of a debt of $1,800 owed by Wilson, president of California Land, to Riviera. Appellant argues that this testimony of plaintiff's own witness was uncontradicted and must be held as a matter of law to overcome the disputable presumption of consideration for the joint venture agreement. It is sometimes said that a party calling a witness "vouches for" or "is bound by" his testimony. This is a vestige of an early common law rule which is generally outmoded except that such a witness still cannot be impeached in certain ways. (27 Cal.Jur., Witnesses, § 144, pp. 170-171; *Worthington* v. *Peoples State Bank*, 106 Cal.App. 238, 241 [288 P. 1086]. The history of the rule is traced in 3 Wigmore on Evidence, 3d ed., § 896, pp. 383-385.) Under the express language of section 2049, Code of Civil Procedure, a witness called by a party "may be contradicted by other evidence." ■ Express testimony may be contradicted by circumstantial evidence as effectively as by direct. (*Gray* v. *Southern Pac. Co.*, 23 Cal.2d 632, 640-641 [145 P.2d 561]; *McNulty* v. *Copp*, 91 Cal.App.2d 484, 490 [205 P.2d 438].) ■ As we have pointed out above the circumstantial evidence that the deed from California Land to Riviera was made in contemplation of the joint venture agreement is strong. Couple with this the

presumption of consideration and the fact that Beutke had represented to Steffensen that the joint venture agreement was not binding on Riviera, a fact which might be weighed by the trial court in determining his motive in volunteering the testimony under discussion, and we are satisfied that the trial court was justified in accepting the circumstantial evidence, buttressed by the presumption, against Beutke's testimony. It may be added that Beutke undertook to give no explanation of why the joint venture agreement came to be executed if, as he claimed, this was done without consideration.

Appellant attacks the sufficiency of the complaint on several grounds. ■ 1. *That the complaint alleges fraud without supporting facts.* The basic ground of recovery was that appellant took the property with knowledge of the trust. Fraud or good faith are immaterial to such a cause of action. "Where the transferee has knowledge of the trust, it is of no importance that he acted in good faith or without intention of perpetrating a wrong." (*Lucas* v. *Associacao Protectora etc. Da Calif., supra,* 61 Cal.App.2d 344, 352; *Scott* v. *Symons, supra,* 191 Cal. 441, 454-455.) ■ 2. *The complaint contains no offer to do equity.* The decree requires respondent Lantz to pay appellant what the court found due him for his expenditures. By this decree respondent is in fact required to do equity. The court will not reverse for an omission in the complaint which is cured by the evidence and the judgment. (Cal. Const., art. VI, § 4½; *Steffen* v. *Refrigeration Discount Corp.,* 91 Cal.App.2d 494, 500 [205 P.2d 727] and cases cited; *Kohn* v. *Kohn,* 95 Cal.App.2d 708, 716 [214 P.2d 71].) The same reasoning applies to appellant's third point under this head that the allegations as to the sale of a portion of the land by appellant were insufficient. The subject was fully covered by the evidence, findings and judgment. ■ 4. *The failure of the complaint to show that plaintiff had some interest of record is fatal.* Plaintiff did not sue as the owner of a record title but as the owner of an equitable interest as assignee of the joint venture agreement. As such equitable owner he was entitled to enforce the trust against appellant as we have heretofore pointed out.

The court as we have stated above found that respondent Lantz was entitled to an accounting of the sale price of Lot 218. Lantz traced his interest in Lot 218 to a tax deed made by the tax collector of Alameda County to one Hinkson in 1921 and by mesne conveyances from Hinkson to California

Land. Steffensen attempted to show a separate title in himself by another conveyance. He argues that Lantz's tax title was defective: 1. *Because the tax deed only conveyed the title of the party to whom the property was assessed,* citing *Dorn* v. *Baker,* 96 Cal. 206 [31 P. 37] and *Syme* v. *Warden,* 114 Cal.App. 707 [300 P. 863]. One of these cases was distinguished and the other expressly disapproved in *Helvey* v. *Sax,* 38 Cal.2d 21, 24 [237 P.2d 269], where the court said: "A property tax operates in rem against the property, and a title granted by a tax deed pursuant to a valid sale of the property for nonpayment of taxes, conveys not merely the title of the person assessed, but a new and complete title under an independent grant from the state."

 2. *There was a failure of proof because no deed to the state was proved.* In 1926 there were two methods by which tax sales could be made: one after sale to the state, the other direct from the tax collector without previous sale to the state. The latter method of sale was equally as valid as the former. (*Jacoby* v. *Wolff,* 198 Cal. 667, 682-683 [247 P. 195].) Sections 3764, 3771 and 3785b, Political Code, which provided for this latter type of sale were carried into the Revenue and Taxation Code as chapter 3, division 1, part 6 and finally repealed in 1949. (Stats. 1949, p. 468.) The deed from the tax collector to Hinkson is in the form provided by section 3785b, Political Code (Stats. 1913, p. 558), which described the form of deed to be given where the property was sold to a purchaser other than the state of California. Where there had been a previous sale to the state, section 3898, Political Code (Stats. 1917, p. 715), provided another form of deed, with a recital of the sale to the state and other recitals not appearing in the deed under consideration. The form of the tax collector's deed to Hinkson makes it clear that the sale was of the sort discussed in *Jacoby* v. *Wolff, supra.* Hence, there having been no deed to the state, no such deed could be proved nor was it a link in the tax title. Cases such as *Litchfield* v. *County of Marin,* 83 Cal.App.2d 730 [189 P.2d 750], holding that the deed to the state must be proved can have no application to a case where under the existing law no deed to the state was made or required.

 3. The property was described in the tax collector's deed to Hinkson as: "In Washington Township, Map of the Town of Newark, Map filed of record in the office of the Recorder of Alameda County, Lots 1 to 26 inc., block 218."

The proof showed that in 1921 there were five maps of the Town of Newark or parts thereof on file in the office of the county recorder. Upon three of these maps no Block 218 appeared. On two maps a Block 218 is shown. On only one of the maps, filed May 6, 1878, is Block 218 divided into lots and on that map Block 218 was divided into 26 lots. The subsequent deeds in the chain of title conveyed Block 218 as shown on the map recorded on May 6, 1878. On this showing it is futile for appellant to argue that the description in the tax collector's deed to Hinkson is uncertain or that it does not describe the same property as that described in the later deeds. "That is certain which can be made certain." (Civ. Code, § 3538.) There was only one map of the Town of Newark of record in the recorder's office which showed Block 218 divided into lots and that showed it divided into 26. The reference in the tax collector's deed, "Lots 1 to 26 inc. Block 218," under the circumstances could only refer to this particular map.

Since the tax title under the rule of *Helvey* v. *Sax, supra,* 38 Cal.2d 21, constituted "a new and complete title" and since this title was proved to have been transferred from California Land to Riviera and from Riviera to appellant, subject to the joint venture agreement, the court properly required appellant to account to respondent for the proceeds of the sale of Block 218. It is immaterial that appellant had received a deed of Block 218 from another source to which the trial court properly found that the tax title was paramount.

Appellant complains of the court's exclusion of evidence that Food Machinery Corporation had been in actual possession of Block 218 for over five years. It is a complete answer that appellant did not plead the statute of limitations. (*Hall* v. *Chamberlain,* 31 Cal.2d 673, 679 [192 P.2d 759].) There could, of course, be no title in Food Machinery Corporation by adverse possession since there was no claim that it paid the taxes during this period. (Code Civ. Proc., § 325.)

Appellant's argument that there was no covenant running with the land is unavailing since the recovery is based on the theory of trust.

The court found that while appellant purchased the Workman judgment prior to his acquisition of the real property from Riviera "negotiations for the acquisition of said real property were commenced prior to the purchase of said Workman judgment." While appellant argues that the ac-

quisition of the Workman judgment was free of the equities of Lantz, the court was entitled to conclude that the purchase of this judgment in anticipation of the acquisition of Riviera's title which was subject to the trust in favor of California Land was a part of a scheme to defeat the trust and therefore must be held to be subject to the trust. This fact disposes of the argument that as the holder of an outstanding junior lien appellant was entitled to purchase the deeds of trust to protect the judgment lien.

After the sale of Lot 218 to Food Machinery Corporation an action was brought to quiet its title in which Lantz was joined as a defendant. Lantz defaulted and judgment was entered quieting plaintiff's title in that action. Lantz had the election to follow the trust property or to hold appellant as trustee for the proceeds of its sale. (2 Scott on Trusts, § 291.1, p. 1606, § 291.3, p. 1609; Rest. Trusts, § 291 (1) (a) and (b) and comment on subsection (1) a and d.) By his default in the quiet title action Lantz elected to ratify the sale and not to attempt to follow the property. This election did not deprive him of his alternative right to hold appellant accountable for the proceeds of the sale. Indeed in order to hold appellant liable for the proceeds he must ratify the sale since the two remedies are alternatives and he could not have both, as that would amount to a double recovery.

Appellant complains that on the accounting certain items of his expenditures were not properly allowed. The court as a condition of quieting respondent's title required him to reimburse appellant for the purchase price of the Workman judgment and the two deeds of trust, certain attorney's fees and other incidental expenses, taxes paid and interest. Appellant argues that it was error not to make an allowance to him for the consideration paid by him for the land. He cites no authority in support of this point and the law in California is to the contrary. (*Henry* v. *Phillips*, 163 Cal. 135, 140-141 [124 P. 837, Ann.Cas. 1914A 39]; *Glenn* v. *Rice*, 174 Cal. 269, 275 [162 P. 1020]; *Davis* v. *Ward*, 109 Cal. 186, 191 [41 P. 1010, 50 Am.St.Rep. 29].) These cases hold that where A purchases from B with notice of the equities of C, C may recover the property from B "upon the condition that the vendee (B) is reimbursed what he has paid before notice." (*Henry* v. *Phillips, supra,* 163 Cal. p. 141, citing many cases.) Here no part of the purchase price was paid by appellant *before notice* and he is therefore entitled to

no reimbursement on that account. The reason for the rule is clear. Respondent has not received the benefit of the purchase price paid by appellant to Riviera and it would be unfair to require him to reimburse appellant for that expenditure which appellant made with notice of his equitable rights.

Appellant's complaint of the refusal to allow him the costs incurred in attempting to foreclose the deeds of trust is equally unfounded. The trust estate received no benefit from these expenditures and they were made in violation of the constructive trust imposed upon appellant as a purchaser with notice of the joint venture agreement.

In one particular we agree with appellant that the judgment against him went too far. Upon payment of the amount found due him the court ordered him to transfer the Workman judgment to respondent. The Workman judgment runs against other defendants and is a lien upon the property of all defendants. It is only insofar as it is a lien against the property in litigation here that respondent should be required not to assert it. The decree should be amended to provide that upon payment to appellant by respondent of the amount found due him by the court on the accounting the Workman judgment should be *pro tanto* satisfied and the lien of that judgment upon the property in litigation should be extinguished. Otherwise respondent would receive a windfall in the Workman judgment which he might later satisfy against other property.

Other arguments made incidentally by appellant are sufficiently answered by what has been said in this opinion.

The trial court is ordered to amend the judgment in the particular specified. Otherwise the judgment is affirmed with costs on appeal to respondent.

Nourse, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied February 25, 1955, and appellants' petition for a hearing by the Supreme Court was denied March 22, 1955.